**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
                                )
**Third Church of Christ, Scientist** )
**Washington, D.C.**               )
**900 16th Street NW**             )
**Washington, DC 20006**           )
                                )
           **Plaintiff,**          )
                                )
           **v.**                  )
                                )        **Civil Action No. 08-01371  (JR)**
                                )
**District of Columbia Historic**   )
**Preservation**                   )
**Review Board et al.**            )
**801 North Capitol Street NE**     )
**Washington, DC 20002**           )
                                )
                                )
           **Defendants[1].**       )
_____ )

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS AND/OR IN THE ALTERNATIVE, A MOTION TO**
**STAY PROCEEDINGS UNDER THE ABSTENTION DOCTRINE**

Defendants Historic Preservation Review Board ('HPRB") and District of

Columbia and Harriet Tregoning (hereinafter "defendants"), by and through undersigned

counsel, hereby file this Reply to the Plaintiff's Opposition to the Defendant's Motion to

Dismiss Plaintiff's Amended Complaint and/or in the Alternative, Motion to Stay

Proceedings Under the Abstention Doctrine.  The defendants state as follow**:**

**ARGUMENT**

_____

[1] The District of Columbia and Harriet Tregoning, the Mayor's Agent for
Historic Preservation are also named as Defendants.

### *A. Plaintiff Lacks Article III Standing.*

"The *sine qua non* of constitutional standing to sue is an actual or imminently threatened injury that is attributable to the defendant and capable of redress by the court." *Williams v. Purdue Pharma Co.***,** 297 F. Supp. 2d 171, 177 (D.D.C. 2003) *quoting Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1206 (D.C. 2002) (*citing*, *inter alia*, *Speyer v. Barry*, 588 A.2d 1147, 1160 (D.C. 1991)). "Article III, of course, gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 154–155 (1990).  In other words, a federal court's jurisdiction can only be invoked when a plaintiff has suffered some threatened or actual injury resulting from a defendant's putatively illegal action. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  To establish standing, a plaintiff must show (1) concrete injuries, personal to the plaintiff, (2) which are fairly traceable to the defendants' conduct, and (3) which are "likely" to be redressed if the relief sought is granted. *Diamond v. Charles*, 476 U.S. 54, 70 (1986).   In other words, a plaintiff must have suffered (*inter alia*) an injury in fact, *i.e.*, the invasion of a legally protected interest which is "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  If a plaintiff cannot meet three prongs of this test, a court must dismiss the suit for lack of standing.

Plaintiff cannot meet this test as to the causation and redressability elements, because it cannot prove any "concrete, personal" injuries caused by the defendant's conduct.  Plaintiff cannot show that its alleged injuries:

> reasonably can be said to have resulted, in any concretely demonstrable way, from [the government's] alleged constitutional and statutory infractions. [Plaintiffs] must allege facts from which it reasonably could

be inferred that, absent the [government's actions], there is a substantial probability that [plaintiffs would not have suffered injury] and that, if the court affords the relief requested, the asserted [injuries of plaintiffs] will be removed.

*Kurtz v. Baker*, 829 F.2d 1133, 1144 (D.C. Cir. 1987)(*quoting Warth*, 422 U.S. at 504).

Here, Plaintiff alleges that it will suffer future financial injury due to the Mayor's Agent's conditional grant of their raze permit application, but its claim for relief is not supported by a justiciable case or controversy. The plaintiff's alleged future financial injury "is not traceable" to the defendants, as the District of Columbia has granted the relief Plaintiff seeks. Notably**,** Plaintiff has failed to cite *any* land use decision under the First Amendment, RLUIPA or RFRA, where the government actually *grants* Plaintiff's request for relief and the Court has found a substantial burden on Plaintiff's religious exercise. *See* Opposition, generally.

Plaintiff's alleged future financial injury, if any, is inextricably linked to its own lease and financing agreement with ICG, the developer and owner of the land upon which Third Church sits, and thus, any injury is self-imposed. *See Family Life Church v. City of Elgin*, 561 F. Supp. 2d 978,988 (N.D. Ill. 2008)(finding no substantial burden when burden alleged by church was "self- imposed"). Defendants District of Columbia and the Mayor's Agent have overturned the HPRB's decision not to allow the razing of the historic building and the Mayor's Agent's order has cleared Plaintiff's application for historic preservation purposes, with one condition precedent. The Mayor's Agent's order allows Plaintiff to obtain a raze permit upon the issuance of a building permit for a new church that Plaintiff claims it intends to build. *See* Exhibit A, Amended and Restated Third Church Lease at ¶F. ("Tenant [Third Church] has rejected "Option C" *because*

*Tenant <u>desires to remain on the Land and has therefore decided to pursue "Option B" in order to build the New Church Facilities</u>)*(emphasis added).

In a desperate attempt to demonstrate an injury sufficient to confer standing, Plaintiff creatively sets forth an impressible laundry list of innumerable procedural impediments allegedly imposed by the District that will cause it to suffer future financial injury. *See* Opposition at 7-8.   Plaintiff claims that because of the Mayor's Agent's order, it must first seek and obtain a planned unit development ("PUD") approval. *Id.* at 2.  Plaintiff also asserts it is "challenging the conditions placed upon it to complete the PUD and HPRB review process and the building permit process <u>before</u> it can obtain a raze permit." *Id*. at 33.

Plaintiff is simply wrong.  The Mayor's Agent's order, does <u>not</u> impose a condition that the Plaintiff complete a PUD or HPRB review process.  The Mayor's agent order does <u>not</u> "impose several additional processes" on the Church, contrary to Plaintiff's assertion.  *Id.* at 8.  The Mayor's agent order has imposed only *<u>one</u>* procedural condition to the issuance of a demolition permit, which is clear on the face of the order. The Mayor's Order succinctly states only *<u>one</u>* condition which is as follows:

> Ordered that the application is **CLEARED for historic preservation review** for the purpose of 12 A DCMR 105.1.7 ***subject to the CONDITION that: Said clearance shall not be given effect and no demolition permit shall be issued until the Applicant has obtained a building permit authorizing the construction of a new church on either the Existing Church Parcel, as described on Exhibit B to the Ground Lease or the New Church Parcel as described in Exhibit C to the same document.***

Decision and Order at pg. 28, *see* Docket #34, attached as Exhibit 1.  Plaintiff must simply obtain a building permit for a new church before the issuance of a demolition permit (which can be accomplished simultaneously).  This condition does not constitute a

substantial burden as a matter of law, because Plaintiff indisputably seeks a building

permit for a new church. *See* Amended Complaint.  Indeed, Plaintiff has repeatedly

advised this Court, the entire purpose of this lawsuit is to build a new church that is

suitable to meet its religious needs. *See* Complaint, generally, *see* Amended Complaint,

generally.  Now, having obtained the exact relief sought, Plaintiff claims that the

condition of obtaining a building permit to build a new church consistent with its lease

and financing agreement with ICG is a "substantial burden". *See* Opposition at 33.

Plaintiff's preverbal "flip flop" or change in position is ironic, especially in light of its

vigorous argument that the District should be estopped from changing its position. *See*

Opposition at 11-13.

The procedural impediments referenced by the plaintiff, namely "a requirement to

first seek and obtain "planned unit development approval" ("PUD") before it can raze its

structure, unlike other landowners", is not set forth in the Mayor's Agent's ordered

condition, as referenced above.   The PUD is only referenced in the plaintiff's self-

imposed lease and financing agreement ("memorandum of understanding") with ICG.

Both the lease agreement and memorandum of understanding state that ICG may obtain a

PUD, not Plaintiff.  According to the lease agreement and memorandum of understanding

between Plaintiff and ICG, the plaintiff (tenant) agreed to allow <u>ICG</u>, the developer and

owner/landlord of the land upon which Third Church sits, to apply for planned unit

development ("PUD") approval.  Plaintiff entered into a financial arrangement with ICG

where it voluntarily agreed to cooperate with <u>ICG's</u> efforts to obtain a PUD.  The lease

agreement states as follows:

4. Cooperation.

(a) Tenant hereby agrees to support ***Landlord's efforts to make an application for a planned unit development ("PUD") for the Combined Property and all other land use entitlement needed from government and quasi-governmental agencies to increase the GFA for the PUD*** and permit construction of a new office building an a new garage, all as determined to be commercial viable in Landlord's reasonable determination. All such approvals are hereinafter referred to collectively as the "Entitlements". Tenant and Landlord shall work under the sole direction of the Landlord, when dealing with all governmental and quasi governmental agencies, the Advisory Neighborhood Commission, the D.C. Preservation League, and the Committee of 100 and similar organization regarding the existing or future Entitlements or historic nature of the Property, the Existing Church Parcel, and the New Church Parcel. Tenant shall take all actions reasonably requested by Landlord . . . . and shall cooperate with Landlord's efforts to pursue historic approval . . . . .Landlord shall have sole approval rights over any public statements, written or otherwise, made by or on behalf of Tenant regarding the New Church Parcel or development of all or part of the Combined Property . . . ."

*See* Exhibit A, Amended and Restated Third Church Lease Agreement.  Plaintiff's

Amended and Restated Memorandum of Understanding or financing agreement, states as

follows:

G. ***Buyer [ICG] desires to combine the Land, the improvements thereon, and the World Building Property to create a single record lot planned unit development (the Combined Property***") . . .

J. Buyer and Third Church have entered into the Agreement to Lease.  wherein Buyer and Third Church have agreed that  . . . they will execute the Amended and Restated Third Church Lease(the "Restated Third Church Lease") in the form attached to the Agreement to Lease to amend and restate the Original Lease in its entity and to set forth their agreements regarding  . . . .  (iv) the development of the Combined property.

*See* Exhibit B, Amended and Restated Memorandum of Understanding.  The Mayor's

Agent's decision simply reflects the language contained in the lease agreement and

memorandum of understanding entered into by the ICG and Third Church, but in no way

conditions the issuance of the raze permit upon Third Church obtaining a PUD.

Similarly, the Mayor's Agent's order in no way conditions the issuance of the raze permit upon Third Church completing an HPRB review process, which is also clear on the face of the order. *See* Decision and Order at pg. 28.  Plaintiff's claim that "in effect, what the Mayor's Agent has done is send the entire controversy back to Defendant HPRB" is unfounded. *See* Opposition at 6. *See* Amended Complaint at ¶¶58E, 58 F. Plaintiff has attempted to conflate and distort the issues before this Court.  The Mayor's Agent's order does not send the Plaintiff back to HPRB.  Any future HPRB review process is not imposed by the Mayor's Agent's order or imposed because its landmark designation, rather, to the extent further HPRB review is required, it is required by virtue of Third Church's location in a historic <u>district</u>  and Third Church's desire to build in a historic <u>district</u>.  Plaintiff is well aware that HPRB has already reviewed its raze permit application because of its landmarked designation and that HPRB's recommended denial has already been overturned by the Mayor's Agent's order.

The only remaining issue is Plaintiff's building permit application, which Plaintiff (or ICG, the actual owner of the land, on behalf of Plaintiff), has yet to file, and the future review of that building permit application by HPRB.  It is disingenuous to argue that any future HPRB process is tied to its historic designation, when any future HPRB process is tied to Plaintiff's location in a historic district. *See* Opposition at 33.  Furthermore, the Mayor's Agent's Order does not add any unreasonable delay or "add years, and further major expense to the ability of Plaintiff to obtain relief". *Id.* at 31.  Plaintiff's own desire to build in a historic district and its landlord's desire to obtain a PUD requires compliance with the District's routine regulatory process.  Landowners of landmarked and non-

landmarked property are all required to abide by this regulatory process, which Plaintiff concedes it must abide by. *Id.* at 34.

It is also disingenuous to suggest that the HPRB review process is a process "that other churches and landowners are not subject to". *Id.* at 31.  As a matter of law, <u>any</u> property owner seeking to build in a historic district must comply with a regulatory review process before the HPRB. *See* D.C. Code § 6-1107  (2009).  As stated, <u>any</u> landowner of landmarked or non-landmarked property seeking to modify or build in a historic district must submit to a regulatory process before HPRB, which renders the requirement non discriminatory.  The process does not result in "special handicaps" Plaintiff so vehemently claims it is subjected to. *Id.*  Moreover, Plaintiff concedes it is not challenging the HPRB regulatory review process because of its location in a historic district. *Id.* at 34.  Third Church is unequivocally "treated on an equal basis as any other landowner in the District", and Plaintiff's claims that is subject to a "separate process" because of its historic designation is not true.  Its historic designation has no relevance to the HPRB process, given the Mayor's Agent's decision and order overturning HPRB's recommended denial of its raze permit application. *Id.*

Even if the Plaintiff could establish any causal connection between the alleged processes "imposed" by the defendants and future financial injury, which it can't, Plaintiff's alleged future financial injury does not constitute a "substantial burden" as a matter of law.  "The cost of acceptably property is just one of the "ordinary difficulties associated with location (by any person or entity, religious or nonreligious) in a large city and does not amount to a substantial burden". *Civil Liberties for Urban Believers v. City*

*of Chicago*, 342 F.3d 752,761 (7th Cir. 2003)(citing *Love Church v. City of Evanston*, 896 F.2d 1082, 1086(7th Cir. 1990).

The Sixth Circuit's analysis in *Living Water Church of God v. Charter Twp. Meridian*, 258 Fed. App'x 729, 733-34 (6th Cir. 2007), is instructive. *Living Water Church of God* is an unpublished opinion involving a RLUIPA challenge based on land use restrictions placed upon a church that had undertaken a construction project. *Id.* The Sixth Circuit indicated that a plaintiff faces a high hurdle in meeting its initial burden of showing substantial burden under RLUIPA, and advised that in an analysis determining whether the plaintiff has met its initial burden, a court should focus on the following question:

> Though the government action may make religious exercise more expensive or difficult, does the government action place substantial pressure on a religious [practitioner] to violate [his] religious beliefs or effectively bar a religious practitioner for [exercising his] religion?

*Id.* at 737. The answer in this case is a resounding no. Even if the defendants' actions make Plaintiff's religious exercise more expensive or difficult, which they don't, the defendants' actions do not place substantial pressure on the plaintiff to violate its religious beliefs, and Plaintiff does not claim that it does.

Plaintiff has also conceded that there is another location that can house their religious activities, which further supports a finding that it has failed to demonstrate a substantial burden on its religious exercise. *See* Declaration of J. Darrow Kirpatrick at ¶4, Docket #37 attached as Exhibit 2. To demonstrate a substantial burden on its religious exercise, a religious organization must show more than just the inadequacy of its current church, it must show "a severe shortage of acceptable alternative property". *See Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 615 F.Supp. 2d 980, 991 (D.D.C.

2009) *citing Guru Nanak Sikh Soc'y v. County of Sutter, 456 F.3d 978, 989*; *Episcopal Student Found v. City of Ann Arbor*, 341 F.Supp.2d 691,707(E.D. Mich. 2004)(distinguishing a case involving a church that experienced massive overgrowth over a 20 year period and the church had extensively explored and exhausted its options before filing suit).  "The availability of other suitable property weighs against a finding of substantial burden." *See Guru Nanak*, 456 F.3d at 992.  Plaintiff has failed to demonstrate a severe shortage of acceptable alternative properties and concedes there is another facility that they can lease to house their religious activities and serve their religious mission.  Therefore, Plaintiff has failed to allege facts that support a finding of substantial burden.

Given the utter lack of causal connection between Defendants actions and Plaintiff's alleged injuries, and Plaintiff's failure to demonstrate that any future financial injuries constitute a substantial burden on its religious exercise, Plaintiff has failed to articulate a justiciable case or controversy for this Court to adjudicate.  As a matter of law, the one condition imposed by the Mayor's Agent's order – the building of a new church, cannot constitute a "substantial burden" on Plaintiff religious exercise, especially given Plaintiff's professed desire to build a new church.  Plaintiff cannot articulate any credible claim that obtaining a building permit application for a new church is now a "substantial burden" when Plaintiff claims that the entire purpose of its complaint is to build a new church suitable to meet its religious needs.  The Mayor's Agent has provided the Plaintiff with the relief that it seeks, and no case or controversy exists to confer Plaintiff Article III standing.  For this reason alone, Plaintiff's case should be dismissed under Rule 12 (b)(6). *See Ashcroft v.  Icqbal*, 2009 U.S. LEXIS 3472 (May 18,

2009)(recently clarifying a more detailed, stricter pleading standard by which a complaint challenged by a Rule 12(b)(6) motion must be judged).

**B. A Careful Balancing the Factors Under the Colorado River Doctrine Clearly Weighs in Favor of Abstention.**

Plaintiff devotes no less than two (2) whole pages in its Opposition to argue estoppel with respect to abstention arguments. *See* Opposition at 11-13. This Court should not be distracted by feeble attempts to preclude the fair adjudication of a dispositive issue that is properly before this Court. The defendants have always maintained that abstention is a "threshold question" that should be determined before addressing jurisdiction. *Worldwide Moving & Storage, Inc. v. District of Columbia*, 445 F.3d 422, 423 n.1 (D.C. Cir. 2006) (citing *Tenet v. Doe*, 544 U.S. 1, n.4 (2005)). Clearly, the facts of this case have changed. At the time of oral argument, the Mayor's Agent's Decision and Order had not been issued. Now that the Decision and Order has been issued and the federal issues are clearly preserved for appeal before the District of Columbia Court of Appeals, abstention is appropriate. Given the changed and current posture of this case, counsel is entitled to argue such and Plaintiff has cited no law which supports a different result.

The defendants should not be precluded from litigating abstention, have secured no unfair advantage, nor has Plaintiff suffered any detriment that would warrant or justify judicial estoppel under the circumstances of the present case. *See New Hamphsire v. Maine,* 532 U.S. 742-750-51 (2000). *Zedner v. United States,* 547 U.S. 489, 126 S.Ct. 1976, 1987, 164 L. Ed. 2d 749 (2006) (observing that judicial estoppel doctrine is equitable in nature); *Stephens v. Tolbert,* 471 F.3d 1173, 1177 (11th Cir. 2006)

(recognizing that judicial estoppel "is an equitable doctrine invoked at a court's discretion").

Here, the Court should not exercise subject matter jurisdiction over Plaintiff's claims. Plaintiff continues to insist that Defendants are broadly arguing that "federal courts lack jurisdiction over all civil rights claims affecting land use issues". *See* Opposition at 5. That is wholly untrue. Defendants are simply arguing under the unique facts of the present case, where the federal issues are inextricably linked to local land use issues, and those same issues are preserved in a lengthy, eight hundred to one thousand (800-1000) paged record[2] before the Mayor's Agent, and currently the subject of a June 9, 2009 appeal before the District of Columbia Court of Appeals, it is entirely appropriate for the Court to abstain under the *Colorado River* doctrine, especially when the local proceedings have progressed more than the federal court proceedings, as discussed below.

Under the *Colorado River* doctrine, a district court can abstain from exercising jurisdiction in certain exceptional circumstances of parallel, duplicative litigation in the interest of sound "judicial administration giving regard to conservation of judicial resources and comprehensive disposition of litigation. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Foster –El et al. v. Beretta*, 163 F. Supp 2d 67, 70 (D.D.C. 2001). As a threshold matter, parallel actions do not have to have the same claims, nor do they have to involve the same parties, as Plaintiff incorrectly suggests. For actions to be parallel**,** "it is not necessary that there be

---

[2] Upon information and belief, this number was estimated by the Office of Planning, the repository of the administrative record.

formal symmetry between the two actions." *Clark*, 376 F.3d 682, 686 (7th Cir. 2004)

(internal quotation marks omitted).  The exact identity of parties and claims is not

required, but the cases must involve "substantially the same parties litigat[ing]

substantially the same issues." *United States v. City of Las Cruces,* 289 F.3d 1170, 1182

*(*10th Cir. 2002*).*

Generally, to determine whether two suits are parallel**,** a district court should

simply examine whether the suits involve the same parties, arise out of the same facts and

raise similar factual and legal issues. *See Clark*, 376 F.3d at 686.  Here, there is no

question that the actions in federal court and in the D.C. Court of Appeals involve the

same parties, arise out the same facts, and raise similar factual and legal issues.

Plaintiff's assertion that its federal claims are "not part of the Petition before the D.C.

Court of Appeals" is belied by the administrative record of the Mayor's Agent, which is

before the D.C. Court of Appeals, whereby the Plaintiff offered testimony and argument

at the Mayor's Agent hearing regarding "the substantial religious burden" that was

allegedly caused by HPRB's actions.  *See* Exhibit C, Mayor's Agent hearing transcript at

96-106, J. Darrow Kirkpatrick's testimony, ("For us, *the central issue of this hearing is*

*the substantial religious burden caused by the denial or our request for a demolition*

*permit .. . . .).*  The substantial religious burden issue is indisputably the same issue before

this Court, which is discussed in detail below. *See* Amended Complaint, generally.

Plaintiff's facial challenge is the <u>only</u> claim that is not before the D.C. Court of

Appeals, but it does not destroy the parallel nature of the D.C. Court of Appeals action

and the federal court action, because only <u>substantially similar</u> claims, not <u>exact</u> claims

are required for actions to be parallel.  Therefore, given that the threshold test under

abstention is met, this Court should apply the relevant factors to determine whether abstention is warranted.

The decision to abstain does "not rest on mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighed in favor of the exercise of jurisdiction. *Moses H. Cohn Memorial Hospital v. Mercury Construction Corp*., 460 U.S. 1 (1983)(expanding the factors to be considered under the *Colorado River* doctrine). As previously stated, the two party inquiry under *Colorado River* doctrine was expanded by the Supreme Court in *Moses H. Cohn Memorial Hospital v. Mercury Construction Corp*., to include six factors for a court's consideration to determine whether exceptional circumstances exist that warrant abstention: 1) whether one court has first assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained and the progress made in the concurrent forums; 5) the source of the law that will provide the rules of the decision and 6) the adequacy of the state court proceeding to protect the rights of the parties. *Id.* at 24-26. A seventh factor, forum shopping, is also appropriate for this Court's consideration. *See Travelers Idem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990). A careful analysis of all the relevant factors compels a finding that abstention is warranted under the particular facts of the present case, as set forth below.

### 1. Jurisdiction Over the Property

Typically, a court that assumes jurisdiction over the property exercises jurisdiction over that property to the exclusion of other courts. *See Colorado*, 424 U.S. at 818. If the action does not involve jurisdiction over the property (an "in rem" or "quasi in rem"

action), but involves "in personam" jurisdiction, then the factor is not weighed for or against abstention. *See Foster –El et al. v. Beretta*, 163 F. Supp 2d at 71 (D.D.C. 2001); *Maryland Casualty Insurance Company v. Newpark Towers Associates*, 1190 U.S. Dist. LEXIS 15317 at *22 (D.D.C. 1990).  If jurisdiction over the property is not involved, then the factor is treated as neutral by the court.  This action does not involve jurisdiction over a property and therefore, this Court should treat this factor neutrally.

### 2. Inconvenience of the Federal Forum

If a federal forum is inconvenient for the parties, this is a factor that weighs in favor of abstention. *See Colorado*, 424 U.S. at 818.  In this case, the federal forum is not inconvenient given its proximity to the local District courts, so the factor is not weighed in favor for, or against abstention. Therefore, this Court should treat this factor neutrally

### 3. Piecemeal Litigation

The desirability of avoiding piecemeal litigation weighs in favor of abstention. *See Id.*  The Seventh Circuit ruled in favor of abstention in *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 751 (7th Cir. 2006)*, also a land use case involving demolition of property, emphasizing that "piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Id.* at 755 *quoting  LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989).  While the plaintiff in *Tyrer* asserted that the federal court action was different in that he was challenging the City's demolition order under the Fifth Amendment Takings Clause, the *Tyrer* Court was not persuaded and found that the two actions were essentially parallel and inextricably interlinked because the "underlying issues are the same, even if they

have been "repackag[ed] . . . under different causes of action." *Tyrer* at 753 *quoting Clark,* 376 F.3d at 687.

This Court should also not be persuaded by Plaintiff's claims that the two actions are substantially different causes of action.  Both proceedings involve the same parties, the same factual record, the same legal issues. The fact that there are additional parties in the action before the D.C. Court of Appeals does not destroy the privity between the two parties also present in the federal action- the District of Columbia (the Mayor's Agent) and Third Church.  Plaintiff's argument that no "inefficient piecemeal litigation" would result because *res judicata* would apply to claims before the Court of Appeals undercuts its argument that the actions do not have the same parties. *See* Opposition at 21.   If *res judicata* would apply, obviously it would only apply if the same parties are in the two separate actions.

Moreover, the plaintiff concedes that the both actions involve the same legal issues in it's own representations at the Mayor's Agent hearing.  J. Darrow Kirkpatrick, a Third Church member and Chairman of its Redevelopment Committee who testified on behalf of Third Church at the Mayor's Agent hearing and also provided a declaration to this Court, in no less than eleven (11) pages of transcribed testimony, stated that the substantial religious burden caused by the denial of the demolition permit, was the "central issue" of the hearing before the Mayor. *See* Exhibit C, Mayor's Agent November 25, 2008 hearing transcript at 96-106.  This is indisputably the same issue before this Court. *See* Amended Complaint, generally.  Relevant excerpts of J. Darrow Kirkpatrick's testimony provide as follows:

> "For us, the ***central issue of this hearing is the substantial religious burden caused by the denial of our request for a demolition permit***. *We*

> ***appreciate you allowing us to testify to this*** . . . Little or nothing – I submit this—little or nothing represents a church's religious exercise more than its architecture, and our current building does not represent us . . . A last quote from our founder which I think is most germane to this discussion. She says "our proper reason for church edifices is that in them Christians may worship God, not that Christians may worship church edifices" ***That concludes my discussion on substantial religious burden.***"

*See* Exhibit C, Mayor's Agent hearing transcript at 96-106.[3]

This Court would also be required to hear the same evidence and the same arguments that the District of Columbia Court of Appeals is positioned to hear.  Upon information and belief, there may be approximately 800-1000 pages[4] in the

---

[3] Whole passages of Plaintiff's Amended Complaint are <u>virtually identical</u> to the representations previously made before the Mayor's Agent at the November 25, 2008 hearing. *See* Amended Complaint at  ¶21 ("The current structure makes it difficult for the Church to follow the Scriptural foundation of worship, 'For I was hungered . . . .' ") *compare with* Exhibit C, Mayor's Agent hearing transcript at 98 ("The current structure makes it difficult for the member to follow the scriptural foundation of its worship, 'For I was hungered . . .' ")(internal quotations omitted); *See* Amended Complaint at ¶26 ("These impacts are not in keeping with the requirement of the governing Manual which states "God requires wisdom, economy . . . .") *compare with* Exhibit C, Mayor's Agent hearing transcript at 102("certainly not in keeping with requirement of Mrs. Eddy's Church Manual directive where she says, "God requires wisdom, economy  . . . .' ").  Plaintiff has undeniably presented the same issues in both fora.

[4] Practically speaking, in the interests of preserving judicial economy and resources,  it makes no sense for the federal action to go forward especially in light of discovery, when discovery has already taken place in the local proceedings and a massive

administrative record regarding the alleged "substantial religious burden" caused by the

District of Columbia's denial of Plaintiff's request for a demolition permit that is

currently before the Court of Appeals.  The danger of the two proceedings reaching

inconsistent results is real given that two different fora could potentially be interpreting

and deciding First Amendment, RLUIPA, RFRA issues as they relate to Plaintiff's claims

of substantial burden made in both fora.  This desirability of avoiding this piecemeal

litigation is a factor that clearly weighs in favor of abstention under the *Colorado River*

doctrine. *See Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 341 (4th Cir. 2002)

(holding that because the federal court was required to "consider[] the *same evidence and*

*arguments*" as did the state court in an earlier action, dismissal or stay under *Colorado*

*River* was proper (emphasis added)); *New Orleans Pub. Serv., Inc. v. Council of City of*

*New Orleans*, 911 F.2d 993, 1005 (5th Cir. 1990) ("There is little to be gained from

rehashing the *same evidence* in another forum. . . . The district court thus properly

concluded that the desire to avoid piecemeal litigation counseled in favor of a stay."

(emphasis added)).

### 4. Order of Jurisdiction- Progress of the Proceedings

The order in which the court obtained jurisdiction is a factor to be considered in

abstention, but the Supreme Court emphasized that the focus of the factor is not just the

timing of the filing of the complaint, but the progress that has been made in each case.

*Moses H. Cone*, 460 U.S. at 21.  In this case, the HPRB ruled on plaintiff's November 30,

2007 application to raze its church and Plaintiff challenged the HPRB's recommended

---

record has already been completed for review before the District of Columbia Court of

Appeals.

denial of the raze permit application on August 12, 2008.  While the administrative

proceedings took place first, the plaintiff filed its federal action first on August 7, 2008.

*See* Docket #1.  However, there was little progression in the case because a dispositive

motion was filed and only briefing and argument occurred. *See* Docket, generally.

     While the federal action was pending, in the local proceedings before the Mayor's

Agent, much progress was made.  Motions were decided, documents were exchanged

between the parties, and a public hearing with witness testimony convened on October

28, 2008. *See* Exhibit at 2-7.  The October 28, 2008 hearing was not completed and was

continued with Plaintiff's agreement to produce more documents by November 15, 2008.

*Id.*   The continued hearing, with witness testimony, was reconvened to November 25,

2008.  *Id.*   An ANC resolution, and supplemental filings were also made a part of the

record. *Id.*   Again, upon information and belief, there are approximately 800-1000 pages

of financial documents, reports, witness testimony and supplemental filings in the

Mayor's Agent's administrative record regarding the alleged "substantial religious

burden" caused by HPRB's landmark designation and recommended denial of Plaintiff's

request for a demolition permit.

     The Mayor's Agent issued its Decision and Order on May 12, 2009, and Plaintiff

subsequently filed its Amended Complaint on May 21, 2009.  On June 9, 2009, a Petition

appealing the Mayor's Agent's Decision and Order was filed.  Plaintiff subsequently filed

a cross appeal.

     The procedural progression of the appellate action in the D.C. Court of Appeals is

not typically long by judicial standards.  Pursuant to App. R. 17(a) of the Rules of

District of Columbia Court of Appeals, the administrative record for the Court of

Appeal's review must be filed within 60 days after the agency is served the petition for review.  Once the record is filed, the DCCA will issue a briefing schedule, ordering the petitioners to file their briefs within 40 days, and opposition briefs to be filed 30 days thereafter.  Upon information and belief[5], after the last brief is filed, oral argument usually occurs within 6-8 months.  The decision can take another 6 months to a year to be released.  One historic preservation case adjudicated before D.C. Court of Appeals, *Embassy Real Estate Holdings, LLC v. District of Columbia Mayor's Agent for Historic Preservation,* 944 A.2d 1036, 1053 (D.C. 2008), was concluded in under two years.  The Mayor's Agent's decision was issued in May 2006.  The briefing and oral argument were competed in March 2007.  The decision was issued March 2008. *Id.*

        Given the exchange of discovery, the taking of witness testimony, and the posture of the appellate action in local court, there has been more progress in the local proceedings, which weighs in favor of abstention.  Even if the D.C. Court of Appeals took two years to issue its opinion, that would be faster than the federal court proceedings, given the current posture of the case.  Briefing has yet to be completed (as of this writing), no discovery has been taken, and the case is in federal district court. Undoubtedly, there will be no final federal resolution of this case until the District of Columbia Circuit adjudicates this case.  The D.C. Court of Appeals will have already reached a decision given the progress of the local court proceedings. Therefore, the local proceedings will have undoubtedly concluded before the federal proceedings have concluded due to the faster progression in the local courts. The "progression factor" weighs heavily in favor of abstention.

---

[5] Based on estimates from the Office of the Solicitor General, D.C.

5. <u>Source of Law</u>

Litigation involving federal law typically weights in favor of abstention. *Moses H. Cone*, 460 U.S. at 23-24.  However, when "litigation that involves difficult -- and perhaps novel -- questions of local law and policy, the source-of-law factor favors abstention". *Foster –El et al. v. Beretta*, 163 F. Supp 2d  at 72; *see American Bankers Ins. Co. v. First State Ins. Co.*, 891 F.2d 882, 886 (11th Cir. 1990) (stating that cases that "involve complex questions of state law … would best be resolved by a state court"); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205 (2d Cir. 1985) (abstention warranted because of novel state law issues involving local safety codes). While the current litigation indisputably concerns federal law, Plaintiff simply ignores the fact that the federal law issues are inextricably intertwined with local law issues under the Historic Preservation Act and its implementing regulations. *See* Amended Complaint, generally. Moreover, Count IV of the Plaintiff's Amended Complaint is a direct agency appeal of the Mayor's Agent's Decision and Order under the Historic Preservation Act, which Plaintiff acknowledges is a local law issue, given its express request that this Court "exercise supplemental jurisdiction" over "nonfederal law claims".  *See* Opposition at 34-35.  In light of the local law issues, the source of law factor may favor abstention.  On balance, considering the federal <u>and</u> local law issues, at the very least, this factor does not weigh against abstention.

6. <u>Adequacy of State Court to Protect Rights</u>

Plaintiff can offer no evidence that the D.C. Court of Appeals cannot adequately protect its rights.  Plaintiff's First Amendment, RLUIPA or RFRA claims are a part of the administrative record before the Mayor's Agent, preserving Plaintiff's claims, which also

weighs in favor of abstention.  The Mayor's Agent allowed a record regarding Plaintiff's

federal claims to be made.  Unlike the District of Columbia's Board of Zoning

Adjustment in *United States v. District of Columbia*, 538 F. Supp. 2d 211, 218 (J.

Robertson D.D.C. 2007), where this Court found a Fair Housing Act violation when the

"BZA refused to listen to [Fair Housing Act] evidence or argument on the point", the

Mayor's Agent did not "refuse" to allow evidence or argument on Plaintiff's federal

claims. *Id.*  To the contrary, the Mayor's Agent allowed Plaintiff to make an evidentiary

record and legal argument regarding its federal claims related to religious burden.  *See*

Exhibit C, Mayor's Agent hearing transcript at 96, testimony of J. Darrow Kirkpatrick

("For us, the central issue of this hearing is the substantial religious burden caused by the

denial or our request for a demolition permit. *We appreciate you allowing us to testify to*

*this* . . . .)(emphasis added).  Plaintiff's claims are adequately protected for adjudication

on appeal before the District of Columbia Court of Appeals.

    Furthermore, the issue of whether the Mayor's Agent's should consider

Plaintiff's First Amendment, RLUIPA or RFRA claims, which is before the D.C. Court

of Appeals, is purely a question of law which the D.C. Court of Appeals can review *de*

*novo*. *See United States v. Felder*, 548 A.2d 57, 61 (D.C. 1988).  The D.C. Court of

Appeals will uphold the Mayor's Agent's decision only if the findings of fact are

supported by substantial evidence in the record considered as a whole and the

conclusions of law flow rationally from the findings. *District of Columbia Preservation*

*League v. Department of Consumer & Regulatory Affairs*, 646 A.2d 984, 989 (D.C.

1994).  The record of Plaintiff's First Amendment, RLUIPA, or RFRA claims before the

D.C. Court of Appeals, and the standard of review by the D.C. Court of Appeals will adequately ensure that the local court will protect the rights of the Plaintiff.

7.   Forum Shopping

The Ninth Circuit has also added another factor to be considered under the *Colorado River* doctrine: whether the exercise of jurisdiction would encourage forum-shopping. *Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290, 297 (9th Cir. 1996); *see, e.g.*, *Holder*, 305 F.3d at 870, 871; *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989). At least one district court in the District of Columbia has adopted the Ninth Circuit's analysis of the factor. *See Sheehan v. Koonz*, 102 F. Supp. 2d 1, 13 (D.D.C. 1999).  Given the facts of the present case, it is entirely appropriate for the Court to consider this factor.

As previously stated, Plaintiff's Amended Complaint added Count IV, which is a direct agency appeal of the Mayor's Agent's Decision and Order under the Historic Preservation Act.  Agency appeals are filed before the D.C. Court of Appeals, not the federal court.  The jurisdiction to adjudicate such appeals vests within the exclusive authority and jurisdiction of the District of Columbia Court of Appeals. *See* D.C. Official Code §2-510; District of Columbia Court of Appeals Rule 15 (a)(1)("Review of an agency order or decision is commenced by filing with the Clerk of this Court . . . ." ). Plaintiff's attempt to bypass and circumvent the appeal process before the local court of appeals by filing an appeal in federal court is tantamount to forum shopping and should not be countenanced by the Court.  Plaintiff's forum shopping clearly weighs in favor of abstention.

8. On Balance

On balance, weighing all the relevant factors that apply to the case, even with the " balance heavily weighed in favor of the exercise of jurisdiction", this Court should abstain from adjudication. *Moses H. Cohn Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16 (1983).  Arguably, five out of the seven factors weigh heavily toward abstention and no factor weighs against it.

### C.    A Stay of the Proceedings Is Warranted Given the Posture of Plaintiff's Similar Action Involving Federal Claims Before the D.C. Court of Appeals.

In *Bledsoe v. Crowley,* 849 F.2d 639 (D.C. Cir. 1988), the D.C. Circuit reinforced the district court's unfettered discretionary authority to stay a proceeding. This Circuit held that:

> There is no question of the District Court's authority to order a stay. The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cause on its docket with economy of time and effort for itself, for counsel, and for litigants.

*Id.* at 645.  *Bledsoe* involved a malpractice action where the defendant argued that Plaintiff's case should be dismissed for failure to complete arbitration in Maryland before filing suit. *Id.*   The District Court dismissed the action and the plaintiff appealed.  The Circuit in *Bledsoe* determined that the District Court should have considered staying the proceeding until arbitration was completed by Plaintiff. *Id.* at 646.  The Circuit noted that the plaintiff had commenced arbitration proceedings after the filing of the federal action. *Id.*  Plaintiff states "there is no justification to stay this action pending the resolution of a later-filed proceeding in the Court of Appeal." *See* Opposition at 25.  *Bledsoe* instructs otherwise, given the Circuit's instruction to the District Court to consider a stay a federal

court proceedings instead of dismissal, when the arbitration proceedings commenced
<u>after</u> the federal court action. *Id.* at 646.

More importantly, in a case involving a the massive administrative record of
evidence such as financial documents, reports, witness testimony and supplemental
filings that is  already before Court of Appeals, and on the same issues,  a stay would
preserve the judicial "economy of time and effort", obviating the need for court ordered
discovery in the federal action.  Most importantly, as previously stated, if the Court of
Appeals upholds the Mayor's Agent's Decision and Order, a building permit can be
obtained and a raze permit can be issued, destroying the historic landmark and mooting
the issues before this Court.  A stay is clearly justified under the particular circumstances
of this case.

Plaintiff cites to *Western Presbyterian Church v. Board of Zoning Adjustment of
the District of Columbia*, 862 F.Supp. 538, 543 (1994), in support of its argument that the
defendants request for a stay (or abstention) should be rejected. *See* Opposition at 25.
*Western Presbyterian Church* is inapposite to the instant case.  In *Western Presbyterian
Church*, the District of Columbia Board of Zoning Adjustment upheld the zoning
administrator's decision to require special exception review for a religious program
designed to feed the poor. *Id.* at 542.   The District Court found that "the effect of the
BZA's decision was to *prohibit* the Church from resuming its feeding program".  The
District Court also found that "the city's action. . . has *precluded* the plaintiff's from
exercising their important religious rights". *Id.*

Here, there is no *prohibition* or *preclusion* of Plaintiff's request for relief. The
Mayor's Agent has *granted*, not *prohibited or precluded* Plaintiff's request for relief,

with only one condition precedent- to obtain a building permit, which Plaintiff has asserted it has plans to do.  There are simply no significant burdens imposed by the defendant, as discussed herein.  As previously stated, Plaintiff has notably failed to cite any land use decision under the First Amendment, RLUIPA or RFRA, where a government *grants* Plaintiff's request for relief and the Court has found a substantial burden on Plaintiff's religious exercise.

### D.  Plaintiff's Facial Challenge Fails As a Matter of Law

Plaintiff's facial challenge fails.  First, Plaintiff continues to confuse an "as applied" challenge with a "facial" challenge.  *See* Opposition at 29-30.  This confusion is evident given Plaintiff's citation to *Western Presbyterian Church v. Board of Zoning Adjustment of the District of Columbia*, 862 F.Supp. 538 (1994) in support of its facial invalidity argument.  Notably, there was no facial challenge in *Western Presbyterian Church case*. *See Id*.  In fact, the language highlighted by Plaintiff from the *Western Presbyterian Church* case ("What makes the District of Columbia's <u>action</u> particularly troubling is . . ."), clearly demonstrates that the Court was critical of the defendant's *actions* and application of its zoning laws, not District zoning laws on its face.  For the same reason, Plaintiff's citation to *Reaching Hearts Intern., Inc. v. Prince George's County*, 584 F.Supp 766 (D.Md. 2008) in equally unpersuasive as to Plaintiff's claims of facial invalidity, as the Court in *Reaching Hearts Intern, Inc*. found that the CB-83-2003 was unconstitutional "as applied" to Plaintiff.

Second, Plaintiff completely misstates and misinterprets the mandates of the First Amendment, RLUIPA and RFRA. While Plaintiff broadly challenges the District's "landmark process" as illegal and unconstitutional due to its "failure to consider or apply the religious liberty protections afforded by the First Amendment, RLUIPA and RFRA", Plaintiff fails to cite any law that requires actual consideration and application of the First Amendment, RFRA or RLUIPA in a local jurisdiction's landmark process. *See* Opposition at 28; Amended Complaint ¶72.  Plaintiff can cite no such law because the First Amendment, RFRA or RLUIPA do not require it.  All that is required is that the government not impose its land use practices in a manner that substantially burdens religious exercise without a compelling interest.  *See e.g.* First Amendment of the United States of Constitution, the Religious Land Use and Institutionalized Person Act of 2000, 42 U.S.C. 2000 et seq. ("RLUIPA"), and the Religious Restoration Act, 42 U.S.C. 2000bb et seq. ("RFRA"),  Plaintiff seeks to create a legal requirement that simply does not exist.

Plaintiff's basic premise and resulting analysis is clearly flawed.  Under Plaintiff's short sighted analysis, Plaintiff simply:  1) compares the exact language from RLUIPA to one District law provision describing "unreasonable economic hardship", 2)  proclaims "the District is comparing apples and oranges" and 3) reaches the final conclusion, that because District law is "quite different" it does not ensure the protection of religious exercise without a compelling governmental interest, which the law requires. *See* Opposition at 30-32.  There has been no attempt by the District, however, to compare District law provisions with the exact provisions of RLUIPA "apple to apple" as described by Plaintiff.  District law, on its face, is not required to mirror RLUIPA.  It is

not required to be an apple.  In other words, District law is not required to be RLUIPA, it is simply required to not violate RLUIPA.

Moreover, District landmarking law is much more comprehensive than the one provision conveniently cherry picked by Plaintiff referencing a "takings standard".  The District's landmarking process proscribes a number of available administrative avenues to ensure that a religious institution is not burdened by the District's historic preservation law or process. That is all that the law requires.  Plaintiff fails to address the fact that District law accommodates those landowners who seek to amend or revoke landmark designation and allow for the consideration of the *effect* of landmarking on all structures, including religious institutions. *See* 10A DCMR § 221.1; 10A DCMR § 213.1, 10A DCMR §217.1.  Plaintiff also fails to address the fact that District law is extremely broad with respect to what information the Historic Preservation Review Board (hereinafter "HRPB") can receive in considering landmark designation and offers a number of administrative accommodations and avenues for any landowner, including a religious landowner, to address the effect of the landmark designation on their property. *See* 10A DCMR §213.1, 10A DCMR §217.1, D.C. Code §§6-1104-5, 10A DCMR §§ 403.4, 407.1(a).

Again, Plaintiff fails to address that under District law, there are <u>multiple</u> ways to seek the alteration or demolition of a religious institution that is a historic landmark, in addition to alleging unreasonable economic hardship, namely: whether (1) the permit is necessary in the public interest because it is consistent with the purposes of the HPA ("adaptation of the structure for current use"); (2) the permit is necessary in the public interest in order to construct a project of special merit; and/or (3) that denial of the permit

will cause an unreasonable economic hardship to plaintiff. *See* D.C. Code §§6-1104-5, 10A DCMR §§ 403.4, 407.1(a).  Clearly, if a religious institution's non adaptation would cause an unreasonable economic burden or hardship, or that religious institution's adaptation is necessary in the public interest, District landmarking laws provide grounds to seek alteration or demolition under the current statutory and regulatory framework of District law.

   Plaintiff also focuses on takings language included in the definition of unreasonable economic hardship under D.C. Code 6-1102 , but there is <u>*no taking standard*</u> for a low income owner, which the Plaintiff would certainly claim they are.  The District's landmark process does not substantially burden religious exercise by imposing an unreasonable standard.  Contrary to Plaintiff's suggestions, the unreasonable economic hardship standard is <u>less</u> onerous than the substantial burden standard under RLUIPA because there is no takings standard for low income owners and  Plaintiff faces a "high hurdle" in meeting its initial burden under RLUIPA of establishing substantial burden. *See Living Water Church of God v. Charter Twp. Meridian, 258 Fed. App'x  at 737*. Moreover, the present case provides a clearest example that the District's standard is not onerous. The Mayor's Agent employed the takings standard and thus reached the same finding that would have occurred under a RLUIPA analysis-the denial of a raze permit constitutes a substantial burden. *See* Decision and Order at pg. 21 ( "Throughout its history, this congregation has manifested an unwavering intent to remain where it is.  Its location is its mission. To leave the areas it has served since 1918 would be tantamount to its destruction. Yet, to remain in its present building would have the same result.").

Plaintiff's utter failure to address the comprehensive statutory and regulatory landmarking process that allows for multiple avenues to address any burden (financial or otherwise) experienced by religious institutions such as the Plaintiff, demonstrates that Plaintiff has mounted a facial challenge that is superficial at best. It is important to reemphasize that under an "overbreadth" facial challenge, a law may only be overturned as impermissibly overbroad under the First Amendment if a "substantial number" of its applications are unconstitutional, "'judged in relation to the statute's plainly legitimate sweep.'" *New York v. Ferber*, 458 U.S. 747, 769-771, (1982) *quoting Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Clearly, Plaintiff's challenge fails to meet this stringent standard. As the Supreme Court said in *Broadrick*, applying the overbreadth doctrine is "strong medicine" which should be "employed by the Court sparingly and only as a last resort." *Id.* at 615 (citations omitted). *See also Sabri v. United States*, 541 U.S. 600 (2004).

### E. The Court Should Not Assert Supplemental Jurisdiction Over Plaintiff's Agency Appeal.

The District maintains that this Court does not have jurisdiction over Plaintiff's Agency Appeal. To the extent this Court dismisses Plaintiffs' federal claims and Plaintiff's agency appeal remains, this Court should not assert "supplemental jurisdiction" over the state claims since there are no viable federal law claims in Plaintiffs' Complaint. *See United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). The factors to be considered by the court under the "supplemental jurisdiction doctrine" are a) judicial economy, b) convenience, c) fairness, and d) comity. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988). It is a well founded principle that federal courts should

avoid making needless decisions concerning state law in an effort to allow the state courts to make decisions on laws well within their expertise.  The jurisdiction to adjudicate agency appeals vests within the exclusive authority and jurisdiction of the District of Columbia Court of Appeals. *See* D.C. Official Code §2-510; District of Columbia Court of Appeals Rule 15 (a)(1)("Review of an agency order or decision is commenced by filing with the Clerk of this Court . . . ." ).

In *Gaubert v. Gray*, the Court dismissed the plaintiff's constitutional claims on the grounds of qualified immunity. 747 F. Supp. 40, 50 (D.C. Cir. 1990).  Noting that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right," the court also dismissed the plaintiff's four common law claims. *Id.*  Citing the Supreme Court's decision in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), the District Court wrote:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a sure-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *Gaubert*, 747 F. Supp. at 50.

In this case, if this Court dismisses plaintiffs' federal claims and Plaintiff's agency appeal remain, comity and justice mandates dismissal of Plaintiffs' remaining agency appeal as this case is in its earliest stages of litigation and plaintiffs' state law claims are already before the District of Columbia Court of Appeals.  Moreover, as previously stated, Plaintiff's attempt to bypass and circumvent the appeal process before the local court of appeals by filing an appeal in federal court is tantamount to forum shopping and should not be countenanced by the Court.  This Court should not exercise supplemental jurisdiction over Plaintiff's agency appeal.

.                                    ***Conclusion***

For all the foregoing reasons, the defendants again respectfully request the

dismissal of all of Plaintiff's claims raised in its Amended Complaint. In the alternative,

the defendants respectfully request this Court to abstain from adjudicating this matter for

a period of time, or by staying the proceedings until final resolution before the District of

Columbia Court of Appeals under Federal Rule of Civil Procedure 7(b).


                                    Respectfully submitted,

                                    PETER J. NICKLES
                                    Attorney General for the District of
                                    Columbia

                                    GEORGE C. VALENTINE
                                    Deputy Attorney General, Civil Litigation
                                    Division


                                    ____/s/___Ellen Efros___
                                    ELLEN EFROS [250746]
                                    Assistant Deputy Attorney General, Civil
                                    Litigation Division


                                    _/s/____Leah Taylor_____
                                    LEAH BROWNLEE TAYLOR [488966]
                                    Assistant Attorney General
                                    441 4th Street, N.W.
                                    Sixth Floor South
                                    Washington, D.C. 20001
                                    (202) 724-7854; (202) 727-6295
                                    leah.taylor@dc.gov